IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORRAINE J. SATTERLEE, | : Civil No. 1:24-CV-1479 |
| Plaintiff, | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| LELAND DUDEK, Acting Commissioner of Social Security,[1] | : |
| Defendant. | : |

MEMORANDUM OPINION

I. Introduction

Lorraine Satterlee filed an application for disability insurance benefits under Title II of the Social Security Act on January 6, 2022. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Satterlee was not disabled from her alleged onset date of August 29, 2020, through the date of the ALJ's decision, November 24, 2023.

---

[1] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Leland Dudek is substituted as the defendant in this suit.

Satterlee now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, we conclude that the ALJ's decision is not supported by substantial evidence. Therefore, we will remand this matter for further consideration by the Commissioner.

## II.  Statement of Facts and of the Case[2]

Lorraine Satterlee filed for disability insurance benefits, alleging disability due to Covid-19, pneumonia, a heart attack, diabetes, high blood pressure, high cholesterol, depression, coronary artery disease, congestive heart failure, and chronic obstructive pulmonary disorder ("COPD"). (Tr. 72). She alleged an onset date of disability of August 29, 2020. (*Id.*). Satterlee was 53 years old at the time of her alleged onset of disability, had at least a high school education, and had past relevant work as a medical record coder. (Tr. 21, 42-45).

An ALJ held a hearing on Satterlee's disability application on October 12, 2023. (Tr. 35-70). Satterlee and a Vocational Expert both

---

[2] Because we are remanding this matter due to the ALJ's procedural error at Step 4, we limit our statement of the case to the procedural history of the plaintiff's disability application, decision, and appeal.

2

appeared and testified at the hearing. (*Id.*). On November 24, 2023, the ALJ issued a decision denying Satterlee's application for benefits. (Tr. 7-22). The ALJ first concluded that Satterlee had not engaged in substantial gainful activity since August 29, 2020, her alleged onset of disability. (Tr. 12). At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Satterlee suffered from the following severe impairments: type 2 diabetes mellitus; congestive heart failure; obesity; hypertension; and asthma-chronic obstructive pulmonary disease overlap syndrome. (*Id.*). At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations. (Tr. 15-17).

> Between Steps 3 and 4, the ALJ then concluded that Satterlee:
>
> [H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. She can frequently balance, stoop and kneel. She can occasionally crouch and crawl. The claimant can frequently work at unprotected heights, moving mechanical parts, and operating a motor vehicle. She can frequently work in weather, in humidity and wetness, in dust, odors, fumes and pulmonary irritants, in extreme cold, in extreme heat and in vibration.

(Tr. 17).

After a discussion of the medical and opinion evidence, the ALJ then found at Step 4 that Satterlee could perform her past work as a medical record coder. (Tr. 21). Specifically, the ALJ identified the Medical Record Coder position as a sedentary exertional job with an SVP of 7, at DOT No. 079.262-014, as identified by the vocational expert at the hearing. (Tr. 21, 64). The ALJ, relying on the vocational expert's testimony, found that Satterlee could perform this job as generally performed in the national economy and as she performed the job. (Tr. 21). However, there is no occupation listed in the DOT at that number. Rather, as the Commissioner points out, DOT No. 079.362-014 is the identifier for a Medical Record Technician. This position is identified as a light work position with an SVP of 6. (DICOT 079.362-014, 1991 WL 646853). In any event, the ALJ denied Satterlee's claim at Step 4, finding that she could perform her past work as generally performed and as she performed it. (*Id.*).

This appeal followed. On appeal, Satterlee argues that the ALJ erred in finding that she could perform her past work because the ALJ relied on a DOT occupation that does not exist. After consideration, we

4

conclude that the ALJ's decision is not supported by substantial evidence. Accordingly, we will remand this matter for further consideration by the Commissioner.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."

5

*Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but

rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable

judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes [him/her] from

engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her

9

impairment(s »." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected

11

the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

## C. The ALJ's Decision is Not Supported by Substantial Evidence.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir.

1999). After consideration, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

As we have explained, the DOT number identified by the vocational expert and relied upon by the ALJ to deny this claim at Step 4, 079.262-014, does not exist. The Commissioner points us to DOT number 079.362-014, which identifies the occupation of Medical Record Technician. The Commissioner argues that the vocational expert merely misstated the DOT number, and that the Medical Record Technician occupation is substantially similar to the plaintiff's past work as she described it. As such, the Commissioner contends that any error in the ALJ's reliance on an incorrect DOT number is harmless. (*See* Doc. 14 at 7-10). However, we disagree and conclude that the ALJ's decision in this aspect is not supported by substantial evidence.

Several courts in this circuit and others have found that an ALJ's decision that relies on inaccurate or incorrect vocational expert testimony is not supported by substantial evidence. *See e.g.*, *Metelli v. Berryhill*, 2017 WL 2570913, at *9 (E.D. Pa. May 26, 2017) ("A VE's testimony that is based on an incorrect DOT number does not provide substantial

13

evidence to support a decision that a claimant is not disabled."); *Wynne v. Colvin*, 2015 WL 4450953, at *6 (E.D. Pa. July 20, 2015) ("Given that the ALJ clearly relied on the VE's testimony referencing an inapplicable DOT code, her decision is not supported by substantial evidence."); *Lobato v. Kijakazi*, 2022 WL 2712884, at *4 (D. Nev. July 13, 2022) ("[L]egal error exists when the ALJ relied upon a DOT job code number that does not exist") (citing *Burnett*, 220 F.3d at 124)). Here, it is undisputed that the ALJ relied on the vocational expert's testimony regarding the plaintiff's past work. (*See* Tr. 21). Accordingly, we conclude that such reliance is legal error where the DOT number provided by the vocational expert and ultimately relied upon to deny this claim does not exist.

We further conclude that this error is not harmless. The Commissioner contends that because the ALJ limited Satterlee to a light work RFC, and the occupation of Medical Record Technician, DOT number 079.362-014 is a light work position, any error is harmless. But on the record before us, we cannot conclude that this position at DOT number 079.362-014 is the position that the ALJ or the vocational expert

14

was referring to and relying on. The Commissioner relies on *Bogoski v. Colvin*, 2015 WL 631954 (D.N.J. Feb. 13, 2015), and argues that the vocational expert's misstatement regarding the DOT number is not outcome-determinative. (Doc. 14 at 9-10). However, in *Bogoski*, while the vocational expert apparently misstated the DOT number and job title, the ALJ in that case "correctly clarified the expert's error." *Id.* at *19. Further, the court in *Bogoski* noted that the substantive characteristics of the correctly identified occupation and the misstated occupation were "identical." *Id.*

Here, while we cannot compare two DOT occupations because one does not exist, the vocational expert and ALJ identified the non-existent Medical Record Coder job as a sedentary position with an SVP of 7, whereas the Medical Record Technician occupation is identified as a light work position with an SVP of 6. Thus, we cannot conclude that the substantive descriptions of these occupations are identical. Moreover, unlike in *Bogoski*, the ALJ here did not correct or clarify the vocational expert's testimony but instead relied exclusively on that incorrect testimony to conclude that Satterlee was able to perform her past work.

15

Thus, we find the Commissioner's reasoning unpersuasive, and that this argument amounts to an impermissible post-hoc rationalization of the ALJ's decision. *See Clinkscales o/b/o T.S. v. Colvin*, 232 F. Supp. 3d 725, 736 (E.D. Pa. 2017) ("[T]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision; the Commissioner may not offer a post-hoc rationalization.") (citations and internal quotation marks omitted); *see also Burnett*, 220 F.3d at 124 ("[O]n appeal, the Commissioner cannot 'recharacterize' the claimant's past relevant work 'in an effort to make sense of the ALJ's decision.'") (citation omitted).

Accordingly, a remand is required for further consideration. While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.

## IV. Conclusion

For the foregoing reasons, the decision of the Commissioner will be REMANDED for further consideration.

An appropriate order follows.

Submitted this 2nd day of April 2025.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge
